IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COLONIAL PARKING CORPORATION, d/b/a AMERICAN PARKING SYSTEM, INC.,<br>　　　Plaintiffs,<br><br>vs.<br><br>WATERFRONT HOTEL ASSOCIATES, S.E., d/b/a WYNDHAM OLD SAN JUAN HOTEL & CASINO, OLD SAN JUAN, INC., SAN JUAN ASSOCIATES, L.P., CROW HOLDINGS, WYNDHAM MANAGEMENT CORPORATION,<br><br>　　　Defendants. | Civil Case No. 04-1034 (CCC)<br><br>REMOVAL ACTION IN CONTRACT |

**OPPOSITION TO "MOTION TO REMAND, AND REQUEST FOR ATTORNEYS FEES PURSUANT TO 28 U.S.C. § 1447 (c)"**

TO THE HONORABLE COURT:

COME NOW, the appearing named defendants Waterfront Hotel Associates S.E. ("Waterfront"), Old San Juan, Inc., San Juan Associates, L.P., and Crow Holdings (collectively the "Removing Defendants"), through their undersigned counsel, and without submitting voluntarily to the jurisdiction of this Honorable Court respectfully state, allege and pray:

**I.
Introduction**

On December 18, 2003, Colonial Parking Corporation d/b/a American Parking System, Inc. ("Plaintiff" or "Colonial")  brought an action in the Court of First Instance of Puerto Rico seeking collection of alleged lease payments in the amount of $ 83,333.30 and *ex contractu* damages for alleged breach, all in connection with a certain "Hotel Parking

-2-

Agreement" (hereafter referred to as the "Agreement"). The Removing Defendants moved to remove the action to federal district court on January, 20, 2004, because, but for the fraudulent joinder of named defendant Waterfront, a Puerto Rico limited partnership, there is complete diversity of citizenship between all the remaining parties with interest, and the amount in controversy exceeds $50,000.00, exclusive of interest and costs. On February 20, 2004, Plaintiff filed a "Motion to Remand, and Request for Attorneys Fees Pursuant to 28 U.S.C. § 1447 (c)" requesting that the present case be summarily remanded to the Court of First Instance of Puerto Rico, and imposition of attorneys fees and costs against the Removing Defendants. In essence, Plaintiff alleges that the Notice of Removal is frivolous, since Waterfront was not fraudulently joined. In support of its contention, Plaintiff submits the argument that the lack of acknowledgment in writing of the commencement date constitutes a mere defense to Plaintiff's action and not a preclusion from bringing a breach of contract action against Waterfront. Plaintiff further argues that Waterfront is an indispensable party to any action made against the rest of the defendants. For the reasons stated below this argument is misleading and ultimately incorrect.

Defendants contend that Waterfront has been fraudulently joined to Plaintiff's action because at present, Plaintiff has no cause of action under the Agreement that justifies the concession of a remedy against Waterfront under Puerto Rico law. The acknowledgment, or the lack thereof, of the commencement date does not constitute a mere defense to Plaintiff's claim, but rather an essential element for the activation of the mutual lease obligations, without which no breach of contract action may arise. Even *arguendo,* that lack of acknowledgment does constitute a mere defense to Plaintiff's claim, Plaintiff is still precluded from bringing a breach of contract action against Waterfront, and the rest of the

-3-

defendants. The Agreement can be characterized either as a pre-contract to a lease agreement, or as a contract with a suspensive condition. If the Agreement constitutes a pre-contract, its "object" is a future lease whose object is in turn 83 certain and defined parking spaces dedicated and submitted to the Horizontal Property regime. If on the other hand, the agreement is construed as a contract with a suspensive condition, the dedication and submission of the 83 parking spaces under the Horizontal Property law by Plaintiff constitute the condition without which the contract's obligations cannot have a binding effect. Since Plaintiff did not furnish Waterfront with 83 parking spaces submitted to the Horizontal Property regime, and has not even attested to their legal possibility or existence, there is no "object" to the pre-contract, and the same is rendered ineffective. Similarly, there is no suspensive condition activating the operation of the lease. Thus, the action for alleged breach of contract and collection of lease payments has no possibility of success, and cannot proceed to judgment, against the other executing party to the Agreement, the only non-diverse defendant, Waterfront. Also, since no breach of contract action under the Agreement can be brought against the rest of the defendants, Waterfront cannot be an indispensable party to an inexistent action. Therefore, removal to the federal district court and dismissal of the present action is proper under the circumstances.

## II.
## Discussion

**A.   The Hotel Parking Agreement Calls for the Lease of 83 Certain and Defined Parking Spaces Submitted to the Horizontal Property Regime**

Plaintiff misleads the Court in its complaint and in its motion to remand by giving the impression that its sole obligation under the Agreement was to furnish Waterfront with 83

-4-

undetermined parking spaces and that it complied with that obligation by presenting Waterfront with 83 parking cards to access the Parking Building. However, Plaintiff conveniently omits to mention that the Agreement signed by the parties demonstrates that the lease and conveyance of 83 certain and defined parking spaces submitted to the Horizontal Property regime, was the actual obligation undertaken by Paseo Portuario and Company, S.E. ("Paseo"), Plaintiff's predecessor in interest, and was the essential element to the effectiveness of the Agreement, and the subsequent lease.

On June 30, 1994, Paseo and Waterfront entered into a contract called the "Hotel Parking Agreement" ( the "Agreement") which would contain the terms and conditions of a future lease (the "Lease ") of 83 spaces in the Parking Building to be built by Paseo. Specifically, in the Agreement Waterfront agreed to pay $100,000.00 a year for 25 years for, and have an option to acquire title at the end of the term (a "remainder interest"), over 83 parking spaces to be conveyed by Paseo in a Parking Building dedicated under the Horizontal Property regime. In relevant parts, the Agreement expressly provides:

> WHEREAS, it is a condition under the Development Agreement, that Paseo provide to Waterfront Hotel, **for its exclusive use**, eighty three (83) parking spaces in the Parking Building to be constructed...
>
> (b) "Condominium Association" shall mean the owners association that will be created pursuant to the **Horizontal Property law of Puerto Rico (Act. No. 104 of June 25, 1958, as amended) as a result of submitting the Parking Building to such law**, thus converting the same into a condominium...
>
> 2. Lease; Rental; Terms
> (a) Paseo hereby agrees to lease to Waterfront Hotel and Waterfront Hotel agrees to lease from Paseo the Hotel Parking Project [the 83 spaces] for an annual rent of $100,000 ("Rent" or "Rental") **and subject to the terms, conditions and provisions hereinafter set forth**, excepting and reserving to the Parking Building the roof, ceiling plenums, windows, storefront, demising and exterior walls and all the common areas of the Parking Building of which the Hotel Parking Project may be a part. Waterfront Hotel shall have the right to use the common areas with other tenants, owners and visitors of the Parking Building **subject to the provisions** set

-5-

forth in this Lease and **the condominium law**, rules and regulations (the "Lease"). Such rental shall be paid in twelve (12) equal monthly installments in advance, on the first day of each month during the Term at the office of Paseo or at any other place Paseo may designate in writing....

 (b) The term of the Lease shall be the period of twenty- five (25) years (the "Term"). The Term shall commence on the earlier of (i) three (3) business days after the date on which the Parking Building is substantially complete or (ii) the date Waterfront Hotel takes possession or commences use of the Hotel Parking Project ("Commencement Date"). **The Commencement Date and the expiration date shall be acknowledged by Paseo and Waterfront Hotel in writing.** Upon the expiration of the Term, ownership of the Hotel Parking Project will be transferred to Waterfront Hotel in the form of condominium interest in the Parking Building where the Hotel Parking Project is located, in consideration of the payment of $1.00 and subject to the terms, conditions and reversionary interest of the Municipality of San Juan pursuant to the Ground Agreement...

 **(e) The rules and regulations applicable to the Parking Building [including the Horizontal Property law] , shall be considered and made to form part of this Lease...**

5. <u>Covenant of Quiet Enjoyment</u>. Provided Waterfront Hotel timely pays Rent and observes and performs all of the covenants, conditions and provisions on Waterfront Hotel's part to be observed and performed hereunder, **Waterfront Hotel shall have the quiet possession of the Hotel Parking Project for the entire Term hereof**, **subject to all the provisions of this Lease**, the Ground Agreement, mortgages constituted over the Ground Agreement, the Hotel Parking Project and the Parking Building, and other matters, **such as the law, rules and regulations, applicable to condominiums to which the Parking Building and this Lease are subject**.

10. <u>Use and Requirements of Law</u>: ... Paseo warrants to Waterfront Hotel that on the Commencement Date and thereafter the Hotel Parking Project and the Parking Building, will be in compliance with all applicable Governmental Regulations relating to their use and condition.

Other sections of the Agreement further indicate, and leave no doubt, that the Parking Building, with the 83 spaces to be leased to Waterfront, would have to be dedicated and submitted to the Horizontal Property regime. These include sections 2(d), 4(a), 4(b), 7, 9, 11(a), 11(b), 12 , 13, 14, 15, 17 (b), 18, 19(a), 19(c), 20, 21(a), 21(b), 21(c), 21(d), 22, 23(a), 23(b), 24(c), 25(b) of the Agreement. Furthermore, this essential obligation has been passed on during the subsequent assignment agreements that eventually conferred title to the building on Plaintiff, namely the "Transfer and Assignment

-6-

of Leasehold (Surface Rights) Estate" subscribed by Paseo and Rexam Limited Partnership, S.E. ("Rexam") on August 27, 1999, and Section 8 of the "Transfer and Assignment of Surface Right and of Title of the Property Ad Tempus of the Building" subscribed by Rexam and Colonial Parking on May 20, 2002.

"The centerpiece of this [Horizontal Property] Regime is not so much the building, but the **apartment as an independent unit**". *Godreau, Michel J. El Condominio: El Regimen de Propiedad Horizontal en Puerto Rico, Editorial Dictum, San Juan 1992, p. 15. (translation ours)[1].* This is so because the most important purpose of the Puerto Rico Horizontal Property regime is to **guarantee each tenant the full enjoyment of its property**. (our emphasis) *See Godreau, Michel J. La Nueva Ley de Condominios, 2nd ed., Editorial Dictum, San Juan 2003, p. 19.* Consequently, the new law regulating Horizontal Property enacted in 2003, known as the "Condominium Law", reinforces this idea. *See Id.* As such, a building submitted to the Horizontal Property regime must be divided into a series of independent units that share some common areas. Therefore, the Condominium Law requires the inscription first of the master deed that submits the whole building to the regime, and later the subordinate deed that generates the first inscription of each individualized apartment. *See 31 L.P.R.A. §§ 1292(a)-(c).* Each apartment or unit is registered as a separate property, by an individual record, filial of the matrix property. *See 31 L.P.R.A. § 1292(c).* An apartment is any unit of construction, capable of independent use, sufficiently delimited, and may consist of cubic spaces either closed, partially closed

---

[1] "El centro o sentido de éste Regimen no es tanto el edificio sino el **apartamento como finca independiente**". (our emphasis).

-7-

or open. *See* 31 L.P.R.A. § 1291(a). Thus, a parking unit, under roof or open to the elements, may be subject to the horizontal property regime. *See Hernandez Denton, Federico. La Ley de Propiedad Horizontal- Un análisis de las Enmiendas de l 976, 44 Rev.Col.Abog. 266 (1983).*

Therefore, since the Agreement called for the Parking Building to be submitted to the Horizontal Property regime, it was Plaintiff's obligation to record each parking space as a separate unit with an individualized deed, tied to the Building's master deed, in the Property Registry. At Waterfront's option, this would also have allowed the 25 year lease to be recorded as a note in the margin of each space's inscription in the Property Registry. It was simply not enough to provide Waterfront magnetic parking cards to access the Parking Building for 25 years, as Plaintiff obstinately contends. To date, Plaintiff has not shown its compliance with such obligations, or even asserted the existence of separate, certain and defined parking space units for Waterfront's exclusive use and enjoyment, even though it purports to collect rent and recover damages from Waterfront's alleged breach. Parking cards on their own do not guarantee the exclusive use and enjoyment of the 83 parking spaces expressly required under the Agreement, and only represent undefined spaces, confused with the rest of the parking spaces rented to other tenants for a daily or monthly fee. This omission represents not a defense to Plaintiff's claim but instead an essential element of the contract, since the segregation and exclusive use and enjoyment of such parking spaces was essential to the operation of the 25 year Lease with a remainder title interest in favor of Plaintiff. The lack of inscription of the 83 spaces under the Horizontal Property regime causes the inexistence of a cause of action under the Agreement upon which Plaintiff can recover against Waterfront.

**B.    Plaintiff does not Have a Cause of Action that Justifies the Concession of a Remedy Against Waterfront under the Agreement.**

The Removing Defendants reiterate that the Lease of the 83 spaces never commenced, because under the express terms of the Agreement which is the crux of this action in contract, at Paragraph 2(b), the "Commencement Date" of the Lease, as defined, had to be acknowledged in writing by both parties to the Agreement. The written acknowledgement was necessary before the mutual lease obligations went into effect, which was never done by Plaintiff in respect of Waterfront. This does not constitute a mere defense to Plaintiff's claim as stated in the motion to remand. If the Lease never commenced, it has no binding effect on the relations between the Parties to the Agreement, and no cause of action may arise from it. Plaintiff argues in the alternative that the commencement date of the Agreement was not tied to the acknowledgment in writing, but to other objective events, i.e. substantial completion of the Parking Building. But even if Plaintiff's theory was accepted, for argument's sake, and the commencement date was tied to such event, Plaintiff still has no cause of action under the Agreement that justifies the concession of a remedy against Waterfront since, in any case, the effects of the commencement date itself, objective or not, depend on the conveyance and availability of 83 certain and defined parking spaces submitted under the Horizontal Property regime.

***(i) As a pre-contract the Agreement does not constitute a basis for a cause of action seeking remedies against Waterfront because its object does not exist.***

There is ample disagreement among civil commentators on the nature of the pre-contract figure. <u>See Albaladejo, Manuel. II-1 Derecho Civil</u>, 8th ed., Bosch, Barcelona 1989, p. 459. However most of them, and Spanish jurisprudence, define a pre-contract, or

-9-

preparatory contract, as a contract that precedes another future contract, a contract where two or more persons promise to enter in the future into another contract that cannot be created at that moment as definitive. *See Castán Tobenas, José. 4 Derecho Civil Espanol, Común y Forral, 10th ed., Reus S.A., Madrid 1977, p. 27; Vázquez Bote, Eduardo. III-1 Derecho Civil de Puerto Rico, FAS, Barcelona 1973, p. 524.* The object of the pre-contract is the celebration of the future contract. *See Díez- Picazo, Luis. I Fundamentos del Derecho Civil Patrimonial, 2nd. ed, Tecnos S.A., Madrid, p. 226.* Almost all types of contracts can become the object of a pre-contract, including a contract to rent or lease. *See Albaladejo, at pp. 460-461.* The Agreement in this case was a pre-contract to the alleged Lease.

The pre-contract must contain the elements common to all contracts (consent, object, and consideration), and also those special elements of the future contract to be performed (determination of its content and the term in which it will be celebrated). *See Castán, at p. 33.* Once made, the promise to enter into a future contract produces the obligation to comply with what was agreed upon, not requiring a new declaration of will by the parties to perfect the future contract. *See Castán, at p.36.* Article 1340 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3747, states that the promise to sell or buy, if there is conformity in the object and price, will give the parties the right to request, from one another, specific performance. When the promise made in the agreement, may not be fulfilled, the general provisions of obligations and contracts will govern. *See Dennis v. City Federal Savings, 121 D.P.R. 197 (1988).* Article 1351 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3811, states that it will be understood that the seller has complied with

-10-

delivering the object to the buyer when such object lies in the power and possession of the buyer.

Since the pre-contract produces an obligation to perform, the parties may seek the specific performance of what was promised as a remedy, although in cases in which the promised object is infungible the pre-contract may not become fully realized. *See Castán, at pp. 35- 36.* Once the pre-contract is converted into a definitive future contract, the effects of the latter may not be brought back, or retracted, to the moment of perfection of the former, as they form different contracts. *See Castán, at p.38.* The pre-contract is extinguished through the general causes of extinction of obligations in the Civil Code. *Id.*

In Puerto Rico the concept of a pre-contract has been extensively analyzed by the Supreme Court in its 'promise to sell an buy' variation which it characterizes as "a preliminary contract which produces an obligation to perform, and not to give, since its only object is the execution of a contract of future sale". *Soto v. Rivera Alvarado, 144 D.P.R. 500, 509-510 (1997); Jordán v. Padró, 103 D.P.R. 813, 103 P.R.R. 1139, 1143 (1975).* As a pre-contract, the effects of a promise to sell and buy cannot coincide with those of an actual sale, since the parties do not bind themselves, for the moment, to convey the thing which is the object of the future contract. *See Id., at 1141-1143.* The acceptance of the promise to sell and buy produces, not a contract of sale which has been perfected, but the obligation to, on the part of one of the parties to sell, and the other to buy the thing object of the future contract. *See Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 103 P.R.R. 1115, 1132 (1975).* In the event of refusal of one of the parties to comply with a pre-contract, an action to demand specific performance will lie. In principle, provided there is

-11-

no actual impossibility, the performance of the obligation to execute a future contract may be demanded. <u>See</u> <u>Jordán</u>, 103 P.R.R. at 1143.

In <u>Prime Retail</u> v<u>. Caribbean Airport</u>, 975 F. Supp 148 (D.Puerto Rico 1997), this Court stated that in order to establish whether there was a breach of contract, the exact obligation which the parties entered into must first be established. It determined that the nature of the disputed contract was a pre-contract. In doing so it noted that "[t]he Spanish term 'precontrato' has been defined as not being a contract that promises another contract, but a base contract, in which the parties promise their activity directed toward the necessary development for its definitive conclusion. *Jose Castán Tobeñas, Derecho Civil Español, Comun y Foral, Vol. 4, at 29 (15th ed. 1993)". <u>Id</u>. at 150-151.*

However, it must be remembered that the object of the pre-contract is the execution of the future definitive contract and thus it also determines the goods or services that will be the object of the latter. *<u>See</u> Díez- Picazo, at p. 226*. The condition of the existence of the object must concur between the preliminary contract and the future definitive contract*. <u>See</u> Díez-Picazo, at pp. 226-227*. Thus, if the object of the future contract cannot or does not exist, the pre-contract itself cannot exist and is thus null and void. "The object of a preliminary contract is the ultimate execution of that [future contract] which cannot be created at that moment. And because this future contract will involve a rendering that is possible... **it follows as a consequence, that a preliminary contract that has as its end the celebration of a [future] contract for an object that does not actually exist, is**

-12-

**itself impossible and, thus, null**". *Castán, at p. 34. (translation and emphasis ours)*[2]. In the case at bar, both the Agreement (pre-contract) and the Lease (future contract) concur on the same object; to wit, 83 parking spaces dedicated and submitted by Plaintiff to the Horizontal Property regime. However, Plaintiff's failure to perfect this object makes both the Agreement and the alleged Lease, null and void.

In the case of the promise to sell and buy, which is analogous with a pre-contract for lease, the Civil Code establishes that in case it is not possible to fulfill, the general provisions of obligations and contracts will govern. Articles 1115 and 1138 of the Civil Code, 31 L.P.R.A. §§ 3165 and 3193, establish that when the creditor is not capable of fulfilling its obligation to do or perform, the debtor is liberated from its own obligation, that is, the specific performance of the obligation may not be demanded. As a result, the performance of the obligation to execute a new or future contract may be demanded, **provided there is no actual impossibility**. See Jordán, 103 P.R.R. at 1145.

In this case, the Agreement between Colonial and Waterfront is not a contract in its complete form because it lacks its object. As a pre-contract its object was a promise to enter into a future contract, namely, the Lease of 83 separate, certain and defined parking spaces submitted to the Horizontal Property regime, an object that never materialized because the individualized parking units were never recorded or provided to Waterfront. Instead, Colonial delivered to Waterfront eighty three (83) magnetic parking cards that far from being the object of the Agreement and of the future Lease, were a crude disguise to

---

[2] "El objeto del contrato preliminar es la ulterior conclusión de aquel otro que no se puede ultimar por el momento. Y como este contrato futuro se ha de resolver en una prestación que sea posible... surge así la consecuencia de que el contrato preliminar que tenga por fín la celebración de un contrato sobre objeto inexistente... será imposible a su vez y, por ende, nulo".

-13-

hide its own non-compliance with the parties' stipulations. Plaintiff's delivery of 83 cards was insufficient to perfect the object of the Lease because it does not concur with the object previously contemplated by the parties in the Agreement.  At the time Colonial filed its complaint, the object of the Agreement did not exist due its non-compliance, and consequently there was nothing to lease. Therefore, either the Agreement never existed as a legally binding contract, in which case it is null and void or, if it did exist, its specific performance and damages cannot be demanded from Waterfront by Plaintiff, because Plaintiff's compliance with the stipulated Horizontal Property recording of the 83 spaces has become an impossibility (Plaintiff cannot provide an inexistent object)[3].

**(ii) As a contract with a suspensive condition the Agreement does not constitute the basis for a cause of action to recover remedies against Waterfront because the suspensive condition has not taken place.**

A contract with a suspensive condition is a contract where the obligations to be mutually undertaken by the parties, and its effects, are subject to a suspensive condition, that is, they are not activated until the suspensive condition takes place. Among the statutes governing conditional obligations we find the following sections.

Article 1066, of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3041, states that any obligation will be demandable which it's performance doesn't depend on a future or uncertain, event, or an event from the past ignored by the contracting parties. Article 1067, of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3042, states that in the conditional obligations, the acquisition of rights, as well as the resolution or loss of rights already

---

[3] If the latter result is the case, while Plaintiff may not demand Waterfront's specific performance of the Lease because it may not compel payment of rent for an inexistent object, Waterfront can still request specific performance of Plaintiff's obligation to convey the 83 parking spaces submitted to the Horizontal Property regime, which would then trigger Waterfront's obligation for the lease payments.

-14-

acquired, will depend on the fulfillment of the condition.

The Puerto Rico Supreme Court has interpreted these provisions. In *Meléndez v. Jiménez* 98 D.P.R. 892 (1970), plaintiffs filed a complaint in which they alleged that the Puerto Rico Planning Board denied certain segregation permits, for which reason it was not possible to effectuate the sales agreed upon with defendants in a contract because that contract was subject to the suspensive condition of the permits approval. The Court concluded that the agreement was not a perfected sale because it lacked a necessary element to perfect the contract. Specifically, the Court noted that the obligation in the deed was subject to a suspensive condition, the approval of the segregation by the Planning Board. In examining the applicable law the Court stated that an obligation that is subject to a suspensive condition binds the debtor as soon as it is complied with. If the suspensive condition is not materialized, the debtor is relieved from complying with the same. **Thus, if the suspensive condition fails to happen, the contract fails to exist at law.** *Id.* at 877.

As stated by the Supreme Court, quoting *Puig Brutau in I-II Fundamentos de Derecho Civil,* Bosch, Barcelona 1959, p. 127 , "in this phase the obligation is contracted and therefore the parties are bound thereby, but they must wait until the uncertainty disappears and it is known whether, definitively, the obligation shall be effective..." And as stated by *Manresa, VIII-1 Comentarios al Código Civil Español, (6th ed.),* Reus, Madrid 1956, p. 367, "If the suspensive condition is complied with, the obligation appears... If it is not performed, the binding effect of law does not appear..."

Furthermore, in *Jarra Corporation v. Axxis Corporation, 2001 T.S.P.R. 162,* the

-15-

Supreme Court established that the general legal norm is that obligations are demandable immediately. However, it clarified that the suspensive condition obligations are an exception to this rule. In this type of obligation, the occurrence of the event that constitutes the obligation will dictate if the parties win or lose contractual rights. The characteristic element of the suspensive condition is the uncertainty of the effectiveness of the juridical nexus, because such nexus is subordinated to the occurrence of an uncertain and future event. If the condition is fulfilled, the parties have to comply with the contractual obligation between them. If not, the obligation is extinguished and the parties are exempt from performing it. Until the suspensive condition is not fulfilled, the mutual obligations cannot be demanded.

In the present case, there is no legal basis for a civil cause of action against Waterfront under the Agreement. The Agreement, in it's fourth Whereas includes the following clause:

> **"WHEREAS,** it is a condition under the Development Agreement, that Paseo provide to Waterfront Hotel, for its exclusive use, eighty three (83) parking spaces in the Parking Building to be constructed en a parcel of land identified as Parcel M-5 located within the Entire Project ("Hotel Parking Project") to be leased from the Municipality of San Juan, Puerto Rico.

The condition is the construction and conveyance of 83 exclusive parking spaces. To have exclusive use and enjoyment for 25 years, and unilateral rigrst for transfer of title, to a determined number of parking space units, suggests at the very least, that such units need to be defined, segregated, limited to the possession, control, and use by a single individual or group, and a concomitant exclusion of others from such participation. This suggestion is further reinforced by the express provisions establishing that the Parking Building, and all its spaces, was supposed to be submitted to the Horizontal Property

-16-

regime discussed above, which leaves no doubt as to the contemplated nature of the 83 spaces. It is not until Plaintiff conveys for lease to Waterfront the 83 parking spaces in separate, defined and individualized units, each recorded under the Horizontal Property law in the Property Registry, that the Lease obligations contracted by both parties will be in effect and full force. The alleged debt does not exist because the mutual obligations under the Agreement as to the nature of the 83 spaces to be conveyed were never activated. Thus, the rent was never due, nor was it liquid or payable. The binding effect of law has not yet arisen. As long as the suspensive condition is pending, it may be said that the legal transaction agreed to under the Lease does not yet exist. Clearly, in this case the Agreement has not been perfected into a demandable Lease, thus it lacks the necessary element to any contract, namely its object. No cause of action lies on an inexistent Lease.

In the alternative, the contractual obligation entered into by the parties, is not legally binding. Article 1068, of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3042, states that:

> If the fulfillment of the condition should depend upon the exclusive will of the debtor, the conditional obligation shall be void. If it should depend upon chance or upon the will of a third person, the obligation shall produce all its effects in accordance withe the provisions of this Code.

In other words, when the fulfillment of a suspensive condition is left totally to the free will of one party, the obligation is null. In *Jarra v. Axxis, supra,* the Supreme Court indicated that legal analysts of Civil Law, such as Puig Brutau and Vélez Torres, sustain that the cited provisions in Article 1068, also extend to the creditor, because the fulfillment of a contractual obligation cannot depend on the discretion of only one party. In this case, Plaintiff is the creditor, and only Plaintiff has the capability of providing Waterfront the

separate, defined and individually recorded parking units that were agreed upon. If Plaintiff refuses to do so, for its own business reasons, Waterfront cannot be expected to fulfill its mutual obligations under the Lease. Waterfront can only demand Plaintiff's specific performance of the obligation to dedicate and convey the 83 parking spaces under the Horizontal Property regimen as a pre-condition for the Lease as stipulated in the Agreement. Until that time, Waterfront is not bound to pay any rent claimed by Plaintiff, the Lease cannot be terminated for non-payment because it never came into effect in the first place, and there are no damages resulting from any alleged breach. Therefore, Plaintiff lacks a cause of action in this case.

**C.    Removal and Subsequent Dismissal of the Present Action is Proper since Waterfront has been Fraudulently Joined and Cannot be an Indispensable Party to an Inexistent Cause of Action**.

A party will be considered fraudulently joined when the plaintiff has not stated a claim for relief against that individual or entity under the applicable substantive law. *See Wright and Miller. 14B Federal Practice and Procedure 3d, West Group, St. Paul 1998, § 3723*. In its Notice of Removal and this opposition to remand Waterfront has shown that Plaintiff has no cause of action under the Agreement under all plausible circumstances. The lack of acknowledgment by Waterfront of the commencement date of the Lease, as expressly required under the Agreement, is but symptom of a much more pervasive malady in Plaintiff's alleged claim, as discussed previously. Nevertheless, the lack of written acknowledgment by Waterfront of the commencement of the Lease precludes the activation of the mutual obligations under the Lease. But even if that acknowledgment did not prevent the activation of mutual obligations, Plaintiff still has no cause of action against

-18-

Waterfront under the terms of Agreement since it has not conveyed the 83 certain and defined parking spaces submitted to the Horizontal Property regime, an essential element ("object") of the Agreement. Without this compliance by Plaintiff, the remaining terms of the Agreement have no effect in imposing any obligation on Waterfront, whether the Agreement is construed as a pre-contract, or as a contract subject to a suspensive condition. As a result, it is clear that Waterfront has been fraudulently joined to this action, making removal by the other Removing Defendants to the federal district court proper, and prompting this Court's subsequent dismissal of the complaint filed against them. Contrary to what Plaintiff argues in its motion to remand, dismissal of the complaint is not an appropriate procedure exclusively in state court. A federal district court may remove a case and subsequently dismiss it. *See Wright and Miller 14B Federal Practice and Procedure 3d § 3723 (the claim of fraudulent joinder is treated much like a motion for summary judgment).*

This Court may then conclude that Waterfront is not an indispensable and necessary party as to Plaintiff's action against the rest of defendants. If dismissal is proper against Waterfront, it is also proper as to the other defendants for the same grounds and reasons discussed above, namely, that Plaintiff has no cause of action under the Agreement, which has not activated any obligations on the part of the other defendants, which are otherwise denied, because the 83 certain and defined parking spaces submitted to the Horizontal Property regime have not been coveyed for their lease as stipulated. Waterfront cannot be an indispensable and necessary party to an inexistent case.

-19-

### III.
### Conclusion

Removal of Plaintiff's claim to the federal district court by the other Removing Defendants is proper in this case as Waterfront has been fraudulently joined and is not an indispensable party to this action as alleged in the Complaint. Plaintiff has no cause of action under the Agreement that justifies the concession of a remedy against Waterfront, or for that matter, against the rest of the defendants.  Notwithstanding, this Honorable Court does have original jurisdiction over this case, if only for purposes of its dismissal.

Since the Removing Defendants have raised legitimate arguments to remove this action to the federal district court, but for Waterfront's fraudulent joinder, and thus the Notice of Removal is not frivolous, as Plaintiff incorrectly asserts, the imposition of sanctions against the subscribing counsel and attorney's fees on the Removing Defendants is not warranted under the circumstances.  To the contrary, Plaintiff's frivolous filing of the complaint, misrepresenting the nature of the mutual obligations of the parties, in an effort to hide its non-compliance with an essential element of the Agreement, merits the award of attorney's fees for Defendants.

WHEREFORE, the Removing Defendants respectfully request that this Honorable Court deny Plaintiff's "Motion to Remand, and Request for Attorneys Fees Pursuant to 28 U.S.C. § 1447 (c)", maintaining this action removed to federal district court, granting any other and further remedy it deems appropriate.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 5th day of April, 2004.

I hereby certify that on 5th. day of April, 2004, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of

-20-

such filing the following: Pedro Jimenez, Esq., and Mónica L. Vega, Esq., Correa Collazo Herrero Jimenez & Fortuño, P.O. Box 70212, San Juan, Puerto Rico 00936-8212.

        *s/FERNANDO D. CASTRO*
        U.S.D.C. No. 201414
        **GOLDMAN ANTONETTI & CORDOVA, P.S.C.**
        P.O. Box 70364
        San Juan, PR 00936-8364
        Tel: (787) 759-4109, Fax (787) 767-9177
        fcastro@gaclaw.com

C:\Documents and Settings\vquinones\Local Settings\Temp\OPPOSITION TO MOTION TO REMAND.wpd